# CHARLESTON.

KENDALL v. SCOTT.

| 48 | 251 |
| f 59 | 68 |
| 48 | 251 |
| e62 | 200 |

Decided November 17, 1900.

1. OWNER—*Assessment—Tax Sale—Title.*
   Where land is assessed with taxes in the name of a former owner, though after a conveyance to another recorded prior to the beginning of the assessment year, and the land is not assessed in the name of such second owner, a sale and deed for nonpayment of such taxes will pass to the purchaser the title of such second owner. (pp. 252, 253).

2. DELINQUENT LANDS—*Tax List—Affidavit.*
   An omission from an affidavit to a list of sales of delinquent lands of the words, "as well as a list of all the real estate redeemed, and the names of the persons who redeemed the same," will not vitiate a sale for taxes after deed made. (p. 253).

Appeal from Circuit Court, Randolph County.

Bill by Z. Kendall against C. H. Scott and R. E. Caplinger. Decree for plaintiff and Scott appeals.

*Reversed.*

W. G. WILSON, for appellant.

JAS. A. BENT, for appellee.

BRANNON, JUDGE:

This is a chancery suit in the circuit court of Randolph County by Z. Kendall against C. H. Scott and R. B. Caplinger

to set aside a tax deed, resulting in a decree annulling the deed, from which decree Scott has taken an appeal.

H. R. Hayes owned a lot of land in the town of Elkins up to the 6th of November, 1890. By deed of that date Hayes conveyed it to E. F. Kendall, and on the 10th January, 1891, the deed was admitted to record. In 1891 Kendall died, leaving the plaintiff, Z. Kendall, to inherit said lot as the only heir of his father. On the tax book of 1891 the lot was charged in the name of the former owner, H. R. Hayes, and not in the name of Kendall, and was returned delinquent and sold for non-payment of taxes under that charge of taxes for 1891, and purchased by Scott and Caplinger. The ground assigned for setting aside the tax ·deed is that the assessment was in the wrong name; that it should have been in the name of E. F. Kendall, and not in the name of Hayes, and it is alleged that this irregularity is one which makes the assessment void, and is an irregularity apparent upon the face of the record in the clerk's office materially prejudicing Kendall, but for which he would have redeemed the land or paid the taxes. Therefore we have to say whether this irregularity is an irregularity apparent upon the face of the record in the clerk's office, such as is meant by Code, chapter 31, section 25, where it is said that after a deed has been made under a tax sale, it shall, pass to the purchaser such right as was vested in the person charged with taxes, "and all such right, title and interest of any other person or persons having title thereto who have not in his or their own name been charged on the land books of the proper county or assessment district with the taxes chargeable on such real estate for the year or years for the taxes of which the same was sold, and have actually paid the same," * * * * "notwithstanding any irregularity in the proceedings under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court." I do not think that the failure of the clerk or assessor to transfer the land on the land book from the name of Hayes to that of Kendall is such a defect as is apparent on the face of the record within the meaning of the statute quoted. That statute means the record of the sale proceedings. It would cover the assessment list, the delinquent list, the sale list; but would it allow you to go away from the face of those lists to find such a defect as the failure to make a transfer? To find that defect you must go into the deed

book to ascertain the fact of the conveyance from the former owner, and the fact that it was recorded prior to the commencement of the assessment year. These facts are extraneous and foreign to the record proper of the sale proceeding; they are facts not revealed by the proceeding of taxation and sale, not manifested by that proceeding, but *dehors* that proceeding, revealed from sources *aliunde*. The words of the statute are that the irregularity must appear "in the proceedings under which the same (the land) was sold." That deed and its recordation pertain to the title, but not to the procedure of sale. I cannot think that the tax purchaser's right can be overturned by such a defect outside of the proceedings of sale. I cannot think that his title perishes from the failure of the clerk to make such transfer, or that the purchaser is bound to look after that deed, to go outside of the assessor's book, delinquent list and sale list to trace up title and see whether proper transfers have been made.

Another consideration which we must note is, what we all know to be a prevalent case, that is, that lands are often kept on the land books in the name of former owners, notwithstanding conveyances, and that in order to cure any defect in a tax deed from such assessment in the name of the former owner, instead of that of the owner at the time of assessment, the legislature made the provision in the statute that the purchaser should get the title of the one charged with the land, or anyone else, not assessed in his own name therewith and paying the taxes. That clause of the statute covers this case. The statute makes it the personal duty of the real owner to have himself charged in his own name with the taxes, and if he fails to do so, and the land is kept on in the name of the former owner, assessment, delinquency and sale in the name of that former owner will pass to the purchaser the title to the land under the letter, spirit and aim of the statute.

It is objected that the affidavit to the sale list is defective. It contains all that is required of the affidavit by section 13, chapter 31, except that it omits the words "as well as a list of all the real estate redeemed, and the name of the person who redeemed the same." Now, what has the list of redemptions to do with the list of sale? As JUDGE LUCAS said in *Jackson* v. *Kittle,* 34 W. Va. 207, such omission is not material to affect the validity of a proper affidavit concerning sale. As this affidavit and

list show the sale of the lot, that is enough to prove that sale, and necessarily, logically negatives any idea of its redemption. Section 25, chapter 31 of the Code says that "no irregularity, error or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, or in the list of sales filed with the clerk of the county court, or in the affidavit thereto," * * * * "shall, after the deed is made, invalidate or affect the sale or deed." We must give some effect to such a broad curative provision; at least, we must give it such effect as will deny the overthrow of a tax deed for such a defect of affidavit as that presented in this case, one concerning a list of redemptions, not concerning the list of sales. The owner of the land slept until after the deed was made, and his condition is worse after such deed, as to alleging defects, from what it was before. The curative statute provisions intended to make tax sales have some efficacy operate more strongly after deed made than before, and nobody, not moved by rigid technicality, can read that section of the Code, without seeing that it is the design of the legislature, after deed made, to cure technical defects of proceedings and make tax sales effectual to give the purchaser something. The rigid principles overthrowing tax sales as laid down in Blackwell and in decisions of years ago have been rendered obsolete in this State by the broad and comprehensive curative provisions stated in the statute cited. The legislature meant nothing else, said nothing else. These principles are stated in *Jackson* v. *Kittle,* 34 W. Va. 207, and *Winning* v. *Eakin,* 44 *Id.* 19, and *Gerke Brewing Co.* v. *St. Clair,* 46 *Id.* 93. We must therefore reverse the decree and dismiss the bill.

*Reversed.*