# CHARLES TOWN.

## BAILEY v. CALFEE.

### Decided September 7, 1901.

1. EQUITY—*Bill Multifarious—Laches.*

   S. purchased at judicial sale certain lands, the property of
   J. M. B., at the price of three thousand and forty dollars, on
   the 6th day of February, 1886, which sale was confirmed Feb-
   ruary 9th, 1886. On the 13th day of March, 1886, S. sold the
   property to C. and B. for the said sum of three thousand and
   forty dollars and the additional sum of one thousand nine hun-
   dred and nineteen dollars, the amount of judgment liens held
   by S. against J. M. B., which constituted the next lien on the
   lands so purchased after the three thousand and forty dollars,
   and was to be paid when demanded by S. On the 12th day of
   June, 1886, under writ of possession issued from the court in
   which the sale was made, the possession was delivered by the
   sheriff to C. as assignee of S., the purchaser. J. M. B. left the
   property, leaving C. in possession, and lived elsewhere until his
   death which occurred January 10, 1890. On the 9th of Jan-
   uary, 1892, J. M. B., in his own right, and as administrator of
   J. M. B., deceased, and J. A. B. and others, infant children of
   Julia B., deceased, by J. M. B., their father and next friend,
   filed their bill and first and second amended bills, alleging that
   S. had by verbal agreement with the owner, J. M. B., purchased
   the land for the benefit of J. M. B. and held same in trust for
   him, and that C. and B. had, with the consent of S., purchased
   from J. M. B., at the price of not less than seven thousand dol-
   lars, which, after paying S., the residue was to be paid to J. M.
   B., also that two hundred acres of the land purchased by S. had

been sold by J. M. B. by oral contract for one thousand five hundred dollars to Julia B., who had fully paid for and was in possession of same; that J. M. B. in his sale to C. and B. reserved from said sale the two hundred acres so sold to Julia B., and another tract known as "Piney Hill" tract, and praying that the sale to S. be held to be a mortgage, and that C. and B. having fraudulently obtained the legal title to the two hundred acres and the Piney Hill tract be held as trustees holding the legal title of the two hundred acres for the plaintiffs (the children of Julia B.) and of the Piney Hill reservation for the heirs of J. M. B., deceased; that C. and B. be required to convey the two hundred acres to the infant plaintiffs or to pay them one thousand five hundred dollars, and rents and profits; that they be required to convey to the heirs of J. M. B., deceased, the Pine Hill tract; that said heirs recover the rents, issues and profits thereof while in possession of C. and B.; that the administrator of J. M. B., recover from C. and B. the residue of the purchase money due on said land; that the dower of S., the widow of J. M. B., in said lands be assigned to her; and that S. be compelled to account for monies received by him on account of deductions made by creditors of J. M. B. which were made for the benefit of J. M. B., the owner of the lands sold. *Held*: (I) The bill and amended bills are multifarious. (II) A court of equity will refuse to grant relief to plaintiffs in such case after such unexplained delay in bringing their suit. (p. 645).

2. BILL—*Allegations—Evidence.*

A case in which the evidence does not sustain the allegations of the bills. (p. 646).

3. DECREE—*Questions of Fact—Appellate Court.*

Where the issues in a cause are questions of fact depending upon the testimony of witnesses, the appellate court will not disturb the decree of the circuit court unless it is clearly contrary to a decided preponderance of the testimony in the case. (p. 646).

Appeal from Circuit Court, Mercer County.

Bill by James M. Bailey and others against William D. Calfee and others. Decree for defendants. Plaintiffs appeal.

*Affirmed.*

BOGGESS & BOGGESS, for appellants.

JOHNSTON & HALL, for appellees.

MCWHORTER, JUDGE:

On the 29th September, 1866, Philip P. Bailey conveyed to John S. Douglass and Henry S. Calfee, trustees, certain prop-

erty, including his interest in a certain survey of one thousand seven hundred acres of land, to secure certain debts therein described. Afterwards Philip P. Bailey conveyed the said survey of one thousand seven hundred acres to John M. Bailey, trustee. John A. Douglass advertised to sell said land under said deed of trust, and in March, 1877, said John M. Bailey enjoined the sale by bill filed in the circuit court of Mercer County. In said injunction suit a decree was rendered in 1885 for the sale of said land by said Douglass, trustee. Said trustee sold the land as directed and reported the sale, and on the 9th of February, 1886, there being no exceptions to the report of sale, said report and sale were confirmed by the court, H. W. Straley being the purchaser of the land, from which there had been several tracts excepted theretofore sold, at the price of three thousand and forty dollars. On the 9th day of June, 1886, the court awarded a writ of possession for said land to the purchaser, Straley, which was duly executed on the 12th day of June, 1886, by the sheriff of Mercer County placing Wm. D. Calfee, assignee of the purchaser, H. W. Straley, in possession of said land. On the 9th day of January, 1892, James M. Bailey in his own right and as administrator of John M. Bailey, deceased, and John A. Bailey, Robert L. Bailey, Della C. Bailey, Roy D. Bailey, Frederick Bailey, infant children of said James M. Bailey, who sued by their father as next friend, filed their bill in equity, alleging that John M. Bailey paid to P. P. Bailey all the purchase money for said land, except that he was to pay off a certain debt due to Shumate's executors, and secured by said deed of trust, executed by said P. P. Bailey, which was a lien on the land; that when John M. Bailey found that a sale of his land was inevitable and being indebted to H. W. Straley he made an arrangement with Straley to buy the said land with the understanding and agreement that the land was to be resold by said Bailey, said Straley to be repaid all of his money due him on the land and the overplus to be paid to said Bailey, or at any rate Straley was to permit Bailey to resell the land and have the benefit of all the money it would bring over and above the amount due by said Bailey to Straley, the latter preferring the money to the land and being willing in the transaction to do anything he reasonably could to aid the said Bailey under the circumstances. Said Straley became the purchaser at the sale made by Douglass the

trustee, said Bailey continued to reside on the land for some time, until he made an arrangement with W. D. Calfee to sell him the land at a price much greater than the nominal price paid by said Straley; in this trade Calfee was to pay off the amount due by Bailey to Straley and to pay off other large amounts agreed on between them and especially was he to pay to the children complainants the amount due them as thereinafter stated, and Calfee was to make a settlement with John M. Bailey of all the numerous transactions; that very close and confidential relations existed between said Bailey and Calfee, being near relatives, and Bailey reposed the utmost confidence in Calfee; that Calfee took possession of the land shortly after the arrangement and Bailey moved off, and Bailey died intestate without having made any settlement with Calfee. Said Calfee by some arrangement let R. H. Bailey have a part of the land, and they, Calfee and R. H. Bailey, made an arrangement by which they agreed to pay and did pay or arrange with Straley the amount due him by said John M. Bailey, which arrangement with Straley was reduced to writing and the original in the hands of Straley and a copy would be filed with the bill marked "H;" that plaintiffs were informed that said Straley in making said arrangment understood that he was acting in good faith towards John M. Bailey, that he was but the nominal owner, the real trade having been made with said John M. Bailey in pursuance of said understanding between Straley and Bailey. That plaintiff James M. Bailey married the daughter of P. C. Honaker of Bland County, Virginia, who was the mother of the infant plaintiffs and that she died in the year 1882; that she inherited from her father a valuable tract of land in Bland County, that she sold said land with the understanding with her husband that the proceeds should be invested in other lands and with her husband she bought of said John M. Bailey two hundred acres of said P. B. Bailey land to be cut off the west end of the piece by a line agreed upon between them. James M. Bailey and wife took possession and moved onto the land, improved the house, and lived there until her death, then with his small children James M. moved to and moved his home to his father's until his second marriage in January, 1886; that James M. Bailey and his wife paid said John M. Bailey in full for said land out of the proceeds of the sale of said lands in Bland County, and said John

M. Bailey applied same to the liquidation of liens on his said land, and said John always recognized the said part of the land as the property of plaintiff's wife, and after her death as belonging to her children; that John M. Bailey was essentially a just and honest man and being embarrassed and burdened with debts, it was always a matter of special solicitude with him to secure to infant defendants their rights in said land and did arrange to secure them in this way. That when Calfee purchased the land of John M. Bailey he expressly contracted and agreed with said Bailey that he would pay to the children (infant plaintiffs) for said land; that defendants Calfee and R. H. Bailey both knew all about the fact that the children owned the land, and that they and each of them had full knowledge of their said equity; that said infants are entitled to the legal title to said land, and ask for same and in default thereof if deemed more equitable that they be decreed one thousand five hundred dollars against said Calfee and R. H. Bailey, one or both; that said R. H. Bailey under an agreement between himself and Calfee was in possession of said two hundred acres of land; that the widow of John M. Bailey was made a party defendant to the bill in order that she might assert or relinquish her dower in said land. That according to the legal intent and meaning and equitable status of said portion Straley under his purchase from Douglass, trustee, held said land as an implied trustee for the benefit of John M. Bailey as to the overplus over and above the amount really due said Straley; then said Calfee and Bailey are equitably due said John M. Bailey, administrator, all the purchase amount yet paid on said land and are both implied trustees, holding said two hundred acres for the benefit of the infant plaintiffs, if not, then they are equitably bound to pay them the said sum of one thousand five hundred dollars with interest. That plaintiffs were unable to give the exact amounts of the aggregate to be paid by Calfee to John M. Bailey for the land, but that it was seven thousand dollars and not less, and would be supplied by proof, or the witness of commissioner's report. That Calfee and R. H. Bailey had not actually paid full value for said land and called on them to show what they had actually paid on the purchase money, when and to whom so paid. And allege that in said sale by said John M. Bailey, he reserved and excepted therefrom a portion of the tract on the north side, known as the Pine Hills, and prayed that all proper decrees be entered enforc-

ing plaintiffs' rights and equities in the case, that all proper accounts be entered and taken and for general relief.

Defendants W. D. Calfee and R. H. Bailey demurred to and answered said bill, denying all the material allegations thereof; denying that they purchased from John M. Bailey, but that they purchased alone from H. W. Straley for the sum of four thousand nine hundred and fifty-nine dollars, the amount he paid three thousand and forty dollars, and one thousand nine hundred and nineteen dollars, the amount of Straley's judgments against said John M. Bailey. Averring that on the 13th of March, 1886, they purchased the land from H. W. Straley; that after the sale was confirmed to Straley he took possession and when respondents bought from Straley they took possession and have ever since remained in possession, that shortly after Straley purchased and about the time respondents purchased from Straley John M. Bailey removed from the land to the city of Bluefield where he resided at the time of his death, which occurred on or about January 10, 1890. Denying that there was any arrangement or understanding with John M. Bailey in regard to the purchase. Denying that James M. Bailey and his wife or either of them ever paid John M. Bailey for a portion of said land out of the proceeds of her Bland County land, and denying that John M. Bailey always recognized said portion of land as the property of plaintiff's wife, and after her death as belonging to her children; denying that they had knowledge of any equities in the infant plaintiffs; denying that they or either of them had any arrangement, agreement or understanding with John M. Bailey or any knowledge of any on the part of H. W. Straley. Plaintiffs filed their amended bill, referring to their original bill, making it a part of the amended bill and correcting same, alleging that some time before the sale by trustee Douglass, John M. Bailey entered into a distinct agreement with H. W. Straley that he should become the nominal purchaser of said land at the nominal sum of three thousand and forty dollars, that by said agreement the beneficial or equitable title and interest was to remain in said John M. Bailey, that the legal title, if conveyed to Straley, was only to secure him for any part of said three thousand and forty dollars paid or advanced by him on the Shumate debt, that relying on said agreement said John M. Bailey was induced to allow Straley to become the ostensible purchaser of said land for the insignificant sum of three thousand and

forty dollars, that said land was worth at a low estimate ten. thousand dollars; that said Bailey if he had not relied on said agreement could readily have found a purchaser at the price of ten thousand dollars, and would have done so, but did not want to sell at any price, and entered into the agreement with Straley in order to gain time to pay off the indebtedness against him and retain his farm; that Straley has never at any time had any interest in said land except as trustee, that while plaintiffs did not charge actual fraud on the part of Straley in the matter, they charged that he by making an absolute deed for said lands to Calfee and R. H. Bailey had rendered it possible for them to perpetrate the grossest fraud and alleged that Calfee and Bailey had resorted to every possible contrivance to cheat and defraud, plaintiffs and the heirs and widow of John M. Bailey, and charged that Straley by his said act was guilty of constructive fraud. Alleged that no pretense or claim was ever set up by Calfee or Bailey in the life time of said John M. Bailey; that they had purchased the land from Straley; that they at all times prior to the death of John M. Bailey admitted and claimed to have purchased same from John M. Bailey, and that they had agreed to pay him for said land the sum of seven thousand dollars, not including the two hundred acres mentioned as belonging to the infant plaintiffs as paid for by their mother and laid off to them and possession taken by James M. Bailey and wife about 1881, and also not including a certain part known as the Piney Hills, said tracts being specifically reserved in the contract of sale between John M. Bailey and Calfee and R. H. Bailey; that after the deaths of John M. Bailey defendants Wm. D. Calfee and R. H. Bailey induced Straley by false and fraudulent representations to make to them an absolute deed for said land with the intent and for the purpose of defrauding plaintiffs and the heirs of John M. Bailey out of what justly belonged to them, and to fraudulently defeat the widow, Sarah Bailey's right of dower in said lands; that said John M. Bailey relying on the honesty of Calfee and Bailey neglected to have his contract of sale with them reduced to writing that said Calfee and Bailey after the death of John M. Bailey seeing that they could obtain apparently a good title offered every inducement to Straley to make them an absolute deed for said land, and that finally Straley was induced to make said deed; that at that time Calfee and

Bailey had full and complete knowledge that said Straley held said land as trustee for said John M. Bailey, and that they had full knowledge of the circumstances as to the agreement between said John M. Bailey and Straley. That Calfee and Bailey since the death of John M. Bailey have been guilty of the grossest and most palpable frauds and resorted to any device known in their efforts to cover up the true nature of the agreement between themselves and John M. Bailey and between said John M. Bailey and Straley and to prevent a full investigation of the matter by the courts; that to prevent plaintiff from instituting and prosecuting this suit threatened to involve them in protracted litigation over pretended claims, that said defendants have for the same purpose asserted large debts due them by the estate of John M. Bailey, amounting to several thousand dollars, that said debts have no existence in fact, and allege that said defendants are due said estate large amounts outside of the purchase money due by them for the land; that John M. Bailey in his contract with Calfee and Bailey reserved said two hundred acres belonging to infant plaintiffs and pointed out to them the exact boundary line between the two hundred acres and the lands he sold Calfee and Bailey and they knew exactly the claim of plaintiffs at the time of the contract; that by their deed from Straley defendants acquired no title except the naked legal title; that in so far as it conveys the two hundred acre tract said Calfee and Bailey hold it in trust for the infant plaintiffs who are entitled to a decree for conveyance of the legal title to them; that for the time defendants have been in possession of the two hundred acres infant plaintiffs are entitled to rents and profits; that Calfee and Bailey are trustees for heirs of John M. Bailey, deceased, of the "Piney Hills" land, and said heirs entitled to a conveyance of the legal title thereof; that under the contract of sale made between John M. Bailey and Calfee and Bailey upon the payment by them to John M. Bailey's administrator of the seven thousand dollars with interest they would be entitled to the lands subject to the dower of Sarah Bailey, the widow; that of said purchase money there is still due and unpaid principal and interest between five thousand dollars and six thousand dollars, which is a lien on the lands; and pray that Calfee and Bailey be compelled to convey to the infant plaintiffs the two hundred acres and account to them for the rents and profits thereof; that the heirs of John M. Bailey recover of Calfee and

Bailey the tract known as the Piney Hills, that same be conveyed to them, and that they recover the rents and profits and that the administrator of John M. Bailey recover of them the residue of the purchase money due on said land, and that the lien therefor be enforced against said land, and that the dower of said widow, Sarah Bailey, be assigned to her; that all proper accounts be taken, etc., and for general relief. Defendant H. W. Straley filed his separate demurrer and answer to the amended bill denying positively each and every allegation of the amended bill alleging any agreement or contract between John M. Bailey and himself or any interest of said Bailey in the purchase by respondent at the sale made by Douglass the trustee, averring that it was a sale at public auction, that respondent was the purchaser at the sum of three thousand and forty dollars being the highest bid, that he received a conveyance therefor after a due confirmation of the sale by the court; that he purchased in his own right for his own purpose in his own name and for his own benefit exclusively, that he paid a fair price, more than was bid for it by any one else; denies that John M. Bailey had any interest of any kind whatever in said purchase or in the land either at the time of said purchase, before or after, under any agreement, contract or understanding with repsondent; denies that John M. Bailey could have procured a purchaser of said land at ten thousand dollars; that respondent sold said land after he purchased it, to his co-defendants Calfee and Bailey and conveyed the same to them; that the sale was *bona fide* and in good faith and denies that he was guilty of any fraud, either actual or constructive in making said sale or conveyance of said land to Calfee and Bailey; denies that he held the title in trust for John M. Bailey; avers that the sale by Douglass was made under deed of trust made by P. P. Bailey to secure certain debts therein mentioned before the land was purchased by John M. Bailey; denies all allegations of fraud or unfair dealing.

Defendants W. D. Calfee and R. H. Bailey also filed their joint answer to said amended bill referring to their answer to the original bill, and making it a part of their answer to the amended bill, and deny positively all the allegations of the amended bill charging them with knowledge of any interest that John M. Bailey had in the purchase by Straley, or that they purchased from John M. Bailey or that he had any interest in the land, whatever after the sale to Straley and denied all alegations of fraud; averred that they purchased from Straley alone in

good faith and had no knowledge of any interest of John M. Bailey in the lands or any interests of the infant plaintiffs or reservation of "Piney Hills" or the two hundred acre tract; deny all of the general and specific charges of fraud in regard to their efforts to prevent investigation in the courts of the dealings between them and the said Bailey and Straley touching said land transaction.

Sarah Bailey filed her answer to the amended bill admitting its allegations and claiming dower in the lands as the widow of John M. Bailey, averring that Straley was only the ostensible purchaser, and held the land as trustee while John M. Bailey was the real owner of the equitable estate in said lands; that Calfee and Bailey acquired nothing but the legal title by their conveyance from Straley; that having failed to comply with their contract of sale made with John M. Bailey, respondent is entitled to dower in kind in said land, at any rate to a gross sum in lieu of dower and to a distributive share of the personal estate of John M. Bailey when same is collected, and prays that such proceedings be had as will secure to her her interests, etc.

Plaintiffs filed their second amended bill referring to and making a part thereof their former bills, and alleging that the plaintiffs, children of Julia Bailey, are infants, that in 1879 and 1880 their mother made two oral contracts with John M. Bailey, whereby she purchased from him about two hundred acres of the west end of his farm, that for the purchase made in the spring of 1879 she was to pay six hundred dollars and for that in the spring of 1880 she was to pay nine hundred dollars, aggregating for the entire purchase one thousand five hundred dollars, that the price of one thousand five hundred dollars was paid in full by Julia a short time after the purchase was made, and the land purchased by her was laid off to her by said John M. Bailey by metes and bounds, that in pursuance of said verbal contract she took possession of the land so purchased and remained in possession until her death and that her husband and children remained in possession after her death, that said Julia made valuable improvements on said land so purchased by her; that by her said purchase under said oral contracts she became the full and complete owner of the equitable title to said land in fee simple; alleges an agreement and an arrangement made on the day of sale by Douglass, trustee, between John M. Bailey and H. W. Straley that when Douglass offered the land for sale

Straley was to bid it in for Bailey. Straley was to hold the legal title as security for certain debts that he held against John M. Bailey; that Straley was to execute certain notes: John S. Carr, Anderson Shumate, R. A. Shumate and J. H. Dare for the amount of the deed of trust debt less the deduction mentioned; that Straley was to hold the legal title as security for the debts he alleged to be due him and as security for the Shumate debt or notes if he should have them to pay, and the equitable title was to remain in John M. Bailey; that he, Bailey, was to resell the land or a part of it and pay off the Straley and Shumate debts and retain the balance of said land; that the land was bid in by Straley under this agreement and understanding; that Calfee was a party to the agreement and was to buy the farm from John M. Bailey upon the terms thereafter to be agreed upon, and arrangements were made with R. A. Shumate, acting for himself and Anderson Shumate and Dare and John S. Carr whereby, under the arrangement that the land was to be bid in for John M. Bailey's benefit, that they, Shumates, Carr and Dare, would accept the bonds of Straley, payable in six, eighteen and thirty months, the sale being for cash under the deed of trust, and that the arrangement was made with the Shumates, Dare and Carr with the distinct understanding that the land was to be bid in for Bailey by Straley; that Shumates, Dare and Carr under the agreement made a deduction on the debt due them of six hundred dollars, and they were induced not to bid on the land, to make the said deduction and to take the notes of Straley on account of the understanding that the land was to be bid in for Bailey by Straley, and that no bid was made except Straley's on account of said understanding that it was to be bought for Bailey's benefit; that said Straley for the purpose of defrauding said John M. Bailey, when asked to put the contract in writing, told Bailey that the arrangement could not stand in law, and fraudulently procured from said John M. Bailey assent to an oral agreement and arrangement; that Straley's purchase under the arrangement is in the nature of a mortgage and was never intended or understood to be an absolute sale; that it was bid in at less than one-third of its value; that plaintiffs were entitled to have all the other lands of John M. Bailey exhausted before the property sold by John M. Bailey to Julia Bailey could be subjected; that their rights under said sale are paramount and superior to all other liens against John M. Bai-

ley and against said land purchased; that they were not parties to said transaction between John M. Bailey, Straley and Calfee and not bound thereby; re-allege the sale by verbal contract of John M. Bailey to Calfee and R. H. Bailey for seven thousand dollars, which they agreed to pay him but never paid, that they had knowledge of the agreement between Straley and Bailey, and that they all had notice of the rights of infant plaintiffs and know the exact boundaries of their land purchased by their mother; that said Straley and Calfee and R. H. Bailey during all the lifetime of said John M. Bailey admitted their respective contracts and agreements with said John M. Bailey, and it was not until after his death in January, 1891, that they denied it; that just prior to the institution of this suit Straley fraudulently procured a deed of said land from Douglass, trustee, and that after that, about the — of May, 1891, made the defendants Calfee and Bailey a deed, being made for the purpose and with the intent of defrauding the infant plaintiffs, the widow of John M. Bailey and his heirs at law of what justly belonged to them, and that by this fraudulent conveyance made by Straley, he received the benefit of the deduction of six hundred dollars made by Shumates, Dare and Carr to John M. Bailey and that he has fraudulently appropriated same to his own use and should be compelled to account for it; that John M. Bailey had no authority or power to sell the land purchased by Julia to Calfee and Bailey, that said attempted sale was in fraud of the rights of the infant plaintiffs, and so far as they are concerned the same is void and of no effect; that since the institution of this suit Miles P. Rowland, George P. Bailey and James H. Wilson have each purchased a portion of the land from Calfee and Bailey, and obtained deeds for same; that they are *pendente lite* purchasers and take subject to this suit, that they had notice of the rights of the parties. They pray that the pretended sale to Straley be held as a mortgage, that a deed of conveyance for the land purchased by Julia Bailey from John Bailey be compelled to be made to the infant plaintiffs, that they recover rents and profits of same for the time it has been in possession of Calfee and Bailey, that Calfee and Bailey be compelled to pay the balance of purchase money due John M. Bailey for said land or if they elect to give up said land to account for the rents and profits of same; that Straley be compelled to account for the money received by him on account of the deduction made by Shumates,

Carr and Dare; that all proper accounts be taken and for general relief.

Defendant H. W. Straley filed his demurrer and answer to the second amended bill of plaintiffs, as did also W. D. Calfee and R. H. Bailey their joint and separate answer, denying all the material allegations of the bill referring to their former answers and making them parts of their answers respectively, and denying the new allegations of the second amended bill.

Sarah Bailey filed her bill in the same court against W. D. Calfee and R. H. Bailey, setting up her dower as the widow of John M. Bailey, in the tract of land sold by Douglass and purchased by Straley; alleging the verbal sale of a part thereof to said Calfee and Bailey by John M. Bailey, reserving the two hundred acres before sold to wife of James M. Bailey, and also the Piney Hill tract, as alleged in the bill and amended bills of James M. Bailey and others, and claiming dower as such widow in three several other tracts, one of two hundred acres sold in the chancery cause of *A. J. Bailey* v. *J. M. Bailey and others,* and purchased at commissioner's sale by H. Buren Bailey for the sum of six hundred dollars, and sold by said H. Buren Bailey to Wm. D. Calfee and now in possession of said Wm. D. Calfee, and another of fifteen acres and another of seventy-five acres which were sold in the chancery cause of *Wm. D. Calfee and others* v. *Bank of Princeton and others,* and purchased by Wm. D. Calfee; that she is informed that R. H. Bailey claims an interest in all said tracts of land, and prays that defendants be required to answer the bill, that her dower be assigned her in kind or a gross sum in lieu thereof, and that she recover damages for the detention thereof; that all proper accounts be taken and inquiries made and for general relief; and said Sarah Bailey filed her amended bill against said Calfee and R. H. Bailey and George P. Bailey, Mary E. Rowland and James H. Wilson, and refers to and makes a part of it her original bill, and makes in effect the same allegations that are contained in the bill and amended bills of James M. Bailey and others concerning the sale by trustee Douglass to H. W. Straley and the purchase thereafter from John M. Bailey by Calfee and R. H. Bailey for the sum of seven thousand dollars, which sale she alleged included the two hundred acres sold by John M. Bailey to James M. Bailey and wife, and the Piney Hill tract; that she was entitled to dower in the excess for which said land sold over the sum of

three thousand and forty dollars, the amount of the trust debt, and that she has a lien on the land for her said dower, that said land was owned by said W. D. Calfee and R. H. Bailey and defendants Geo. P. Bailey and Mary E. Rowland and James H. Wilson, and further alleging that when Wm. D. Calfee purchased the two hundred acres from H. Buren Bailey for six hundred dollars he retained two hundred dollars of the purchase money to pay off and discharge plaintiff's contingent right of dower in said land and that said Calfee has never paid and refuses to pay the same, and re-alleges her right of dower in the two other tracts calling it eighty and eighteen acres instead of seventy-five and fifteen acres as set out in her original bill, and claiming dower therein.

Calfee and R. H. Bailey filed their demurrer and answer to the original bill, denying the material allegations thereof; all verbal agreements or understandings about buying the land from John M. Bailey, or that they fraudulently obtained a deed therefor from Straley; aver that the tract of land referred to in the bill as sold in the case of *A. J. Bailey* v. *John M. Bailey,* to H. B. Bailey and by him to Calfee was sold for the purchase money due from John M. to A. J. Bailey and when sold brought no more than the purchase money due and costs of suit and sale, and that said land and no part thereof belonged to respondent or either of them at the time of institution of plaintiffs' suit, nor does it now so belong to them, and that they had no interest in any of the lands referred to in the bill. These same respondents also answer the amended bill, denying its allegations and averring that the several tracts of two hundred, eighty and eighteen acres were sold for the purchase money due on them and not subject to the dower rights of plaintiff and deny that they sold for an inadequate price.

H. W. Straley filed his affidavit exhibiting therewith the written agreement or contract referred to in the original bill of plaintiffs James M. Bailey and others between H. W. Straley and W. D. Calfee and R. H. Bailey under which Calfee and Bailey purchased the lands from Straley, purchased by him from Douglass, trustee, at the judicial sale, from which it appears that after reciting the purchase by Straley of said lands at the price of three thousand and forty dollars from said trustee, Douglass, Calfee and Bailey agreed to purchase said land from Straley for the said price, and to pay in addition thereto one thousand nine

hundred and nineteen dollars, amount of judgments held by Straley against John M. Bailey, to be paid when demanded by Straley, reserving a lien on the lands to secure Straley, and on payment of the one thousand nine hundred and nineteen dollars Straley was to assign to them without recourse on him the said judgments against John M. Bailey, and to convey or cause to be conveyed to them the title to the lands.

Depositions of many witnesses were taken for plaintiffs and defendants, to which various exceptions were taken.

On the 16th of February, 1898, the two causes were heard together "upon the original bill and first and second amended bills in the first of the above mentioned causes and upon the joint answer of the defendants, W. D. Calfee and R. H. Bailey, to all of said bills, and upon the plaintiffs' general replications to all of said answers, upon the separate answer of the defendant H. W. Straley to all of said bills and upon plaintiffs general replication to all of said last mentioned answers, and upon bill of plaintiff in the second of the above named causes, upon the joint answer of the defendants W. D. Calfee and R. H. Bailey to said bill, upon plaintiff's general replications to said answers, upon all the depositions taken in the causes and upon the record and all the papers in the chancery cause of *John M. Bailey* v. *John A. Douglass,* trustee, and others referred to in said causes and upon all the orders and decrees heretofore entered herein and upon the agreement of counsel that the depositions taken in the first of the above named causes should be read with the second of the above named causes, and was argued by counsel. Upon consideration, and without passing upon any of the exceptions taken to the depositions taken in the cause, the court is of opinion that the plaintiffs in said causes are not entitled to the relief prayed for in their respective bills, and that the same should be dismissed, doth so adjudge, order and decree," and adjudged costs to the defendants in each case. From this decree the plaintiffs appealed, and say, first, that "the court erred in not excluding the evidence of H. W. Straley, W. D. Calfee and R. H. Bailey, as to personal transactions and communications with John M. Bailey, the said John M. Bailey being dead;" and, second, that "the court erred in dismissing the plaintiffs' bills in said causes, with costs, and in not declaring the sale made by John A. Douglass, trustee, to H. W. Straley, a mortgage, and that said W. D. Calfee and R. H. Bailey held said land as con-

structive trustees, subject to the rights of plaintiffs." There was a large amount of evidence taken and exceptions taken to certain parts of it by plaintiffs and by defendants, upon which exceptions the court did not pass, but it is presumed that in deciding the case the court excluded such evidence from consideration as was incompetent. In *Wells-Stone Mercantile Co.* v. *Truax,* 46 W. Va. 531, (syl. pt. 2), it is held: "In a case tried by a court in lieu of a jury, it is not error in the court to hear illegal testimony, the court being fully competent to discard such evidence." See also *Nutter* v. *Sydenstricker,* 11 W. Va. 535; *State* v. *Seabright,* 15 W. Va. 590; *Abrahams* v. *Swan,* 18 W. Va. 274.

In so far as the depositions of H. W. Straley, W. D. Calfee and R. H. Bailey referred to statements made, and conversations held by John M. Bailey to and with the said Straley, Calfee and Bailey, as stated by plaintiffs' witnesses, they are competent to testify. It is insisted that the bills of plaintiffs James M. Bailey and others are multifarious and should be dismissed on that ground. The prayers of the bill and the first and second amended bills are almost innumerable, and are for the relief of various parties and for many objects, the payment to the infant plaintiffs of the one thousand five hundred dollars, the price of land paid or the conveyance to them of the two hundred acres of land alleged to have been purchased by their mother from John M. Bailey. This was an independent contract, separate and apart from the other transactions in which the other plaintiffs had no interest. And also for the conveyance to the heirs of John M. Bailey of the "Piney Hills" and for the recovery of rents and profits therefor; and also for the recovery of the balance of seven thousand dollars, the price alleged by plaintiffs to be the amount agreed by Calfee after paying Straley what was due him; also for the assignment of dower in the lands to Sarah, the widow of John B. Bailey, and also that H. W. Straley be required to account for sums alleged to have been recovered by him on account of deductions made by the creditors of John M. Bailey for the benefit of said Bailey, which were not paid over by Straley. It is insisted by appellees that the bill and amended bills of plaintiffs should be dismissed because of their *laches*: "that John M. Bailey and those who claim under him have slept too long upon their rights, if they ever had any." The sale was made by Douglass, trustee, under decree of the court on the 6th

day of February, 1886, at which H. W. Straley became the purchaser at three thousand and forty dollars, the sale was confirmed a few days thereafter; on the 12th day of June, 1886, by writ of possession W. D. Calfee was put in possession of the land as assignee of H. W. Straley and continued in possession, while John M. Bailey left the land and lived at Bluefield until his death in January, 1900. Plaintiffs' bill was filed January 9, 1892, within a month or six years after the confirmation of the sale to Straley. "The defense of *laches* may be made by demurrer, when the facts manifesting it appear in the bill." *Whittaker* v. *Improvement Co.*, 34 W. Va. 217, (syl. pt. 4); *Jackson* v. *Hull*, 21 W. Va. 601; and *Trader* v. *Jarvis*, 23 W. Va. 100, (syl. pt. 2). "Delaying in the assertion of a right, unless satisfactorily explained, even when it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver; and especially is such the case in suits to set aside transactions on account of fraud or infancy. *Laches* and neglect are always discountenanced by a court of equity." *Bank* v. *Chapman*, 101 U. S. 567; 1 Dan. Ch. Pl. & Pr. 559, clause 9 (6th Ed.) Plaintiffs' bill and amended bills allege fraud on the part of H. W. Straley and W. D. Calfee and R. H. Bailey, especially Calfee and Bailey in procuring from Straley an absolute deed for the property by false and fraudulent representations with the intent and purpose of defrauding the infant plaintiffs and heirs of John M. Bailey, deceased. When fraud is relied upon to secure the relief sought, prompt action must be taken. In *Strong* v. *Strong*, 102 N. Y. 69, it is held, "The right to rescind a contract for fraud must be exercised immediately upon discovery thereof, and any delay in doing so, or the continued use and occupation of the property received under the contract, will be deemed an election to affirm it." *Trader* v. *Jarvis, supra; Hale* v. *Cole*, 31 W. Va. 576; *Doggitt* v. *Helm*, 17 Grat. 96; *Wagner* v. *Baird*, 7 How. 234, 258; *Carr's Admr.* v. *Chapman's Legatees*, 5 Leigh 104; *Hayes* v. *Good*, 7 *Id.* 452; *Atkinson* v. *Robinson*, 9 *Id.* 393; *Corruthers* v. *Trustees*, 12 *Id.* 610; *Harwood* v. *Railroad Co.*, 17 Well 79. The defendants in their answers as well as their depositions deny all the allegations of fraud and unfair dealings, and the record bears them out in their position. The sale was a public, judicial sale made by Douglass, the officer of the court; was regularly confirmed without exception to the sale or report of sale; within a few days

the purchaser resold the property and the assignee of the purchaser invoked the writ of the court to place him in possession of the property and the former owner of the property for whose benefit it is alleged to have been purchased was evicted from the property and made no claim to it while he lived, between three and four years, and the plaintiffs took no steps in the matter for about two years after his death. There is evidence tending to prove the allegations of the bill and amended bills, but it is made up of conversations had with the defendants which are for the most part vague, indefinite and uncertain. These conversations are denied or explained. The original bill does not charge fraud against any of the defendants in the transaction except by implication. In the amended bill it is specifically asserted that no actual fraud is charged against the defendant H. W. Straley, but alleged that by making an absolute deed of said lands to defendants Calfee and Bailey he had rendered it possible for them to perpetrate the grossest fraud, and alleged that said Calfee and Bailey had resorted to every possible contrivance to cheat and defraud plaintiffs, and allege that Straley was by his said act guilty of constructive fraud, but failed to allege against said Calfee and Bailey any specific fraudulent acts or contrivance to cheat and defraud them. The testimony is conflicting and contradictory, and seems to fully sustain the decree of the circuit court by a fair preponderance. The sale to Straley being held valid, it follows that the claim of the widow to dower in the lands in controversy or any of them fails.

For the reasons herein stated, the decree complained of is affirmed.

*Affirmed.*