# CHARLESTON

Day *v.* Fay *et al.*

State *v.* Day *et al.*

Submitted February 13, 1906.    Decided February 20, 1906.

1.  TAXATION---*Tax Sale---Affidavit of Sheriff.*
    The syllabus in *State* v. *McEldowney, et al.*, 55 W. Va. 1, (47 S.
    E. 653), approved,   (p. 68,)

2.  PRINCIPAL AND AGENT---*Evidence of Agency---Burden of Proof.*
    Where a tax deed is sought to be set aside on the ground that
    the vendee therein was the agent of the former owner to pay the
    taxes on the land conveyed, the burden is on the party seeking
    to set such deed aside to prove such agency.  (p. 68.)

3.  TAXATION---*Setting Aside Tax Deeds---Allegata et Probata.*
    A case where the evidence is insufficient to establish the allega-
    tions of the bill.  (p. 75.)

(McWHORTER, PRESIDENT, *dissenting*):

Appeal from Circuit Court, Greenbrier County.

Bills by Alice C. Day against H. H. Fay and others and
by the State against Alice C. Day and others.   Decree for
Alice C. Day against A. G. Williams, and bill by the State
dismissed; and the State and said Wliliams appeal.

> *Affirmed in part.*
> *Reversed in part.*
> *Bill of Alice C. Day Dismissed.*

WILLIAMS & DICE, for appellants.

JOHN W. ARBUCKLE, HENRY GILMER, W. G. MATHEWS,
and WATTS, GAINES, DAVIS & MATHEWS, for appellees.

SANDERS, JUDGE:

On Dec. 19, 1857, John Williams, the father of A. G.
William, the appellant, granted to the father of the appellee,
A. G. Chenoweth, a tract of 400 acres of land, situated in
Greenbrier county.    A. G. Chenoweth was a minister of
the Methodist Episcopal church, and, for some time prior to
the war between the States, was stationed at Frankford, in
Greenbrier county, but removed from that place, and died

intestate, in the year 1864, in the State of Indiana, leaving a widow and several children.

The widow, Ann C. Chenoweth, died testate in the year 1881, devising all her property, both real and personal, to her daughter, the appellee here.

This tract of 400 acres of land was returned delinquent for the non-payment of taxes thereon for the years 1885 and 1886, and sold on the 7th day of November, 1887, and purchased by the appellant, A. G. Williams, and the clerk of the county court of Greenbrier county, on the 17th day of May, 1889, made him a deed for it. On the 22nd day of December, 1890, Williams conveyed said tract of land to H. H. Fay and others, trustee of the Gauley Coal Land Association.

On the 4th day of February, 1903, the plaintiff, Alice C. Day, filed her bill in the circuit court of Greenbrier county, alleging that during the life time of her father, A. G. Chenoweth, the taxes on this land had been regularly paid, and that after his death her mother made arrangements with the appellant, A. G. Williams, by which he was to pay the taxes on this tract of land, and that her mother sent to him, at stated times, money to cover the amounts paid by him on said taxes; and that, up to the death of Mrs. Chenoweth, in the year, 1881, Williams faithfully and conscientiously attended to the matter for her. That after the death of her mother, she wrote to the Auditor of this State, and also to the clerk of the circuit court of Greenbrier county, for information, and through information derived from this correspondence, she was placed in communication with J. H. and S. B. Williams, brothers of A. G. Williams, and wrote to them in regard to the matter. That she received a reply from S. B. Williams. telling her that A. G. Williams had been paying the taxes on the land for Mrs. Chenoweth; and that, acting upon this letter she, in 1882, wrote to A. G. Williams in regard to the land and the payment of taxes thereon; and, growing out of the correspondence thus begun, and what is shown of the previous dealings between Mrs. Chenoweth and the appellant, A. G. Williams, Mrs. Day claims that Williams became her agent to pay the taxes, and that the purchase of the land by him at the tax sale in 1887 should be held to be a purchase for her, and that the conveyance to

the Gauley Coal Land Association should be set aside. Plaintiff's bill is drawn with double aspect, and seeks, first, to have the various deeds constituting the title of the Gau- · ley Coal Land Company, to which company this land was conveyed by the Gauley Coal Land Association, set aside, and to recover the land for the alleged reason that the sheriff's affidavit to his return of the list of lands sold in November, 1887, is fatally defective.   But this is not insisted upon in this Court.   Second, it seeks to recover the land on the alleged ground that A. G. Williams was the agent of plaintiff for the purpose of paying her tax on this land, and that he failed to pay said taxes and suffered the land to be returned delinquent and purchased it at the tax sale, in his own name, in violation of his trust; and that the Gauley Coal Land Association purchased the land from him with knowledge of said alleged agency.   And in the event plaintiff should fail to establish the fact that said company took the land with notice of such agency, the bill prays that she may be decreed the value of said land against the plaintiff.

The State of West Virginia, at October rules, 1903, filed a bill setting up that a tract of 400 acres of land, situated in Meadow Bluff district, in Greenbrier county, was forfeited in the name of A. G. Chenoweth for failure to enter the same for taxation after the year 1900, and was liable to be sold for the benefit of the school fund.   The defendant, Alice C. Day, filed her answer, denying that said land was forfeited, on the ground that Williams was her agent to pay the taxes, but, in the event that the court should hold that said title was forfeited, she asked to be allowed to redeem.   The final decree shows that these two causes were heard together, and the bill filed by the State was dismissed, and a recovery taken in favor of the plaintiff, Alice C. Day, against the defendant, A. G. Williams, for $9,000, and from which decree the State and A. G. Williams have appealed.

The claim made by the plaintiff, Alice C. Day, in her bill, that the tax deed from Buster, Clerk, to Williams, is void for irregularities in the proceeding under which it was made, has been abandoned; or, at least, is not insisted upon in this Court, and it will only be necessary to state that it is no

longer an open question in this State that such irregularities as are complained of will not vitiate a tax deed, but are cured by the provisions of section 25, chapter 31, Code. *Boggess* v. *Scott*, 48 W. Va. 316; *State* v. *McEldowney*, 54 W. Va. 696; *Kendall* v. *Scott*, 48 W. Va. 251; *State* v. *McEldowney*, 47 S. E. R. 653; *Hornage, et al* v. *Imboden, et al.*. decided at this term.

This brings us to the consideration of the claim made by the plaintiff, Alice C. Day, that A. G. Williams was her agent to pay the taxes on the 400 acre tract, and that he failed to do so, and suffered the land to be returned delinquent, and purchased it at the tax sale in his own name, in violation of his trust with her. The burden is upon Mrs. Day to show such agency, or the existence of such relation, between herself and Williams, as rendered it improper for Williams to become the purchaser. Has she done so? This question can be very clearly answered in the negative; and it is hardly necessary, when a case turns purely upon a question of fact, for this Court to undertake in detail to point out the reasons for its conclusions; but a brief reference to the facts in this case will be made to show the false clamor of the plaintiff, Mrs. Day.

A. G. Chenoweth died in 1864 and Mrs. Chenoweth in 1881. Mrs. Day claims that A. G. Williams was the agent of her mother, during her life time, to pay the taxes on this land, but the only evidence tending to show this is that A. G. Williams himself admits that at one time he received some money from his brother, S. B. Williams, which had been sent to S. B. Williams by Mrs. Chenoweth to apply on the taxes, and that he, A. G. Williams, paid it to the sheriff. This is the only money shown to have come into his hands from Mrs. Chenoweth, and it is also shown that he applied it as he was requested to do. By Mrs. Chenoweth's will Mrs. Day was made her sole devisee, yet, if such ever existed, she has utterly failed to produce any correspondence between her mother and A. H. Williams in reference to this land, or the payment of taxes thereon.

At the time of the death of her mother, Mrs. Day was living in Michigan, and soon thereafter she wrote to the Auditor of this State, and to the clerk of the county court of Greenbrier county, in reference to this 400 acre tract,

and, as a result of this correspondence, she was put into communication with J. H. and S. B. Williams, brothers of A. G. Williams, and wrote to them, and, on Oct. 12, 1881, she received a reply from S. B. Williams, telling her that A. G. Williams said he had received money from her mother and had kept the taxes paid up until that time. This letter, of course, is not evidence against A. G. Williams. Mrs. Day paid no further attention to the matter until Nov. 28, 1882, more than a year after she received the letter from S. B. Williams, when she wrote to A. G. Williams, in regard to the land and the payment of taxes thereon. This letter is significant in view of the alleged agency of A. G. Williams, as the whole tenor of the letter is that Mrs. Day desires to know the amount of the taxes, and when they fall due, so that she can attend to it. She says, "Will you be so kind as to let me know when they fall due and how much it is so that I can relieve you in future?" There is no intimation that she wanted him continue as her agent, admitting that he had been the agent of her mother. In reply to this letter, Mrs. Day received a postal card, dated Dec. 14, 1882, and signed by A. G. Williams, but which is admittedly not in his handwriting. A great deal of evidence was taken in an endeavor to establish the fact that this postal is in the handwriting of one James A. Donnally, a stepson of Williams; and ,who attended to a great deal of business for him; and Williams himself says that it looks to be in Donnally's handwriting, and that he doesn't believe that Donnally would have written it without being authorized so to do. Counsel for Mrs. Day attach great importance to this postal, and interpret the words, "I will attend to the business for your mother," as meaning that Williams would attend to it for Mrs. Day on account of her mother. But Mrs. Day herself places a different interpretation upon it. In her deposition, she says: "The reference in the card to his attending to the business for my mother means the method he would use in transferring the legal title of the land from my mother or otherwise to me." And, while it is now admitted that the postal was writen by some one other than Williams, she says, in her deposition, "I am familiar with A. G. Williams' signature and handwriting, having frequently read letters from him to my mother, and

also from having received letters from him, and I identify the writing on the postal card and the signature as his·" But Williams goes further in the postal card, and says: "James Knight, a good friend is the sheriff and is perfectly safe if you write him at Lewisburg all will be right." Here he gives her the name and address of the tax collector, and suggests that she write him in regard to the matter. What more could Mrs. Day expect from Williams in the payment of taxes, or looking after this land for her, after he had given her the information for which she asked in her letter? After the receipt of the postal card, Mrs. Day says that she wrote to A. G. Williams to pay the taxes and keep an account of the amount, and send same to her, and she would reimburse him, and that she received a reply from him, in which he stated that the amount was a mere trifle, that he would pay it along with his own taxes, that the amount was so small it had not impressed itself upon him, but that at some time he would furnish her such statement.   She filed neither this letter nor the reply thereto.   The letter written by Mrs. Day of date Nov. 28, 1882, and the postal reply thereto, is the only correspondence that is shown to have passed between the parties prior to the time that the land was returned delinquent, purchased by Williams and conveyed to him.   Upon this correspondence, and the letter which she claims to have received from Williams saying that he would pay the taxes, Mrs. Day predicates the agency which is the foundation for her suit. She nowhere shows, or attempts to show, that Williams ever received one cent of money from her to be applied on the payment of these taxes. The burden of proof is upon her to establish agency, and she endeavors to do so mainly on the contents of a letter which she does not file, but the loss of which she accounts for by the fact that, owing to the ill health of herself and her first husband, Smart, she was almost continually traveling; and also by the fact that she was an authoress and magazine editor, with a great many manuscripts to examine, and a large correspondence in many countries.   Williams denies that he ever wrote the letter which she claims to have received from him saying that the taxes were a mere trifle, but, on the contrary, says that he himself was hard pressed, during the time that this trans-

action is alleged to have occurred, to keep the taxes paid on the land owned by him.

After the year 1882, nothing further appears to have been done by Mrs. Day until 1891, when she wrote to A. G. Williams that she was coming to Ronceverte, and for him to meet her there. She came to Ronceverte, and met Williams for the first time at a county fair held at Lewisburg, at which time she says that Williams told her that the land had been sold and purchased by him, but that it was a benefit to her that he had done so; that he would buy the land from her, and a price of $3,000 was named, or convey her another tract in lieu thereof, or re-convey to her the tract purchased. Williams denies that he ever offered to re-convey the land to her, but says that he, at that time, told her that he had sold and conveyed the land to the Gauley Coal Land Association, but he admits that he offered to convey her another tract in lieu of the one purchased by him, and says that he always intended to convey the land itself, or other lands of equal value, to the proper claimant, but that Mrs. Day, when she came to see him in 1902 in regard to the matter, claimed that he was her agent to pay the taxes, and, inasmuch as he did not consider that he was under any legal obligation to her, he refused to do anything in the premises. Williams' claim that he told Mrs. Day in 1891 that he had conveyed the land to the Gauley Coal Land Association is borne out by the fact that when, in 1892, her husband, Smart, visited Williams with a view to looking at the land which Williams was to convey to her, Williams wrote her a letter, in which he stated that "if you will make me such title as will remove all clouds from the present one, then I will make you in consideration thereof a deed to two hundred and fifty acres of my land." This letter was sufficient, on its face, to notify her that either he had disposed of the land and could not convey it to her, or that, if he still had it, he would not convey it to her. In either event, it was her duty to proceed promptly to recover it; but, instead, she did nothing further until the year 1902, ten years thereafter, when she came to Greenbrier county, and, as she claims, learned for the first time that Williams had disposed of the land.

There was no taxes paid on this land for the years 1881 to 1886, inclusive, by any one, until after it had been returned

delinquent and sold.   Mrs. Day alleges in her bill that the taxes for the years 1881 to 1884, inclusive. were paid by Williams, and this is true, but these taxes were not paid until 1890, after the land had been returned delinquent and sold for the taxes of 1885 and 1886, and purchased by him.   Williams says that the only reason he paid these taxes was, that the sheriff still held the tickets, and would have lost the amount represented by them, had he not done so.

Admitting, for the sake of argument, that A. G. Williams was the agent of Mrs. Chenoweth, during her life time, to pay the taxes which the plaintiff, Mrs. Day, has wholly failed to establish, yet the agency terminated upon the death of Mrs. Chenoweth, and even if it were true that Mrs. Chenoweth furnished the money with which to pay the taxes up until the year 1880, it is equally true that during the entire time of the alleged transaction between Mrs. Day and Williams, extending over a period of more than twenty years, not one cent of money was ever paid by her on these taxes, and nowhere has she shown that Williams was her agent to pay them for her.   On the contrary, in the only letter which she wrote to Williams before the tax sale, and the purchase by him of the land, she asks him to give her the amount of the taxes, and when they became due, so that she could take the matter in her own hands and relieve him in future.

Mrs. Day, in her deposition, says:   "I have read letters written by my mother to the Williamses, and especially A. G. Williams, and also letters from the latter to my mother with reference to the payment of taxes on this land, and know from my own knowledge that mother sent Albert G. Williams money from time to time before her death in 1881 to pay taxes on this land."   Where are these letters?  Being the sole devisee of her mother, it is only reasonable to suppose that, after her death, Mrs. Day came into possession of all her papers, yet she does not produce the letters to which she refers in her testimony, and gives no excuse for not doing so.   And again, this testimony is not consistent when viewed in the light of her actions after the death of her mother.   If A. G. Williams had been attending to the matter of paying the taxes for her mother, as she says, and

she was aware of the fact, it would hardly have been necessary for her to have written to the Secretary of State and to the clerk of the county court of Greenbrier county, to ascertain whether or not the taxes had been paid, and if so, by whom. Then it is shown, by her own testimony, that she wrote first to S. B. Williams, and not until 1882 did she communicate with A. G. Williams, the man, who, according to her own contention, had been paying the taxes all these years.

Viewed in the light of all the circumstances, and given the greatest weight possible for Mrs. Day, the evidence wholly fails to show that A. G. Williams was the agent for either Mrs. Chenoweth or Mrs. Day in the matter of paying taxes on this land.

We recognize the rule laid down by this Court that if the evidence is conflicting and contradictory to such an extent that reasonable men may differ as to the true preponderance thereof, this Court will not reverse the finding of the circuit court; but, to secure such reversal, the evidence, when sifted, must plainly preponderate against the decree. *Naughton* v. *Taylor*, 50 W. Va. 233; *Kennewig* v. *Moore*, 49 W. Va. 323; *Bailey* v. *Calfee*, 49 W. Va. 630; *Weaver* v. *Akin*, 48 W. Va. 456; *Camden* v. *Dewing*, 47 W. Va. 310; *Whipskey* v. *Nicholas*, 47 W. Va. 35; *McIntosh* v. *Oil Co.*, 47 W. Va. 382; *Spurgin* v. *Spurgin*, 47 W. Va. 38, and many other cases laying down the same rule. But this rule does not apply to the case we have here, and should only apply where the evidence is conflicting, and when, upon the whole evidence, it is doubtful as to what decree should be entered; and then, again, it certainly does not apply where the decree has been rendered in favor of one who has not made out a *prima facie* case. A *prima facie* case must always be made out, and in the establishment thereof, and in the proof rebutting such *prima facie* case, if there is such a conflict in the evidence as to render it doubtful what conclusion should be reached, then this court should accept the conclusions of the trial Judge; but the plaintiff, Mrs. Day, has wholly failed, in our opinion, to establish even a *prima facie* case, and this being so, the question of conflict of testimony does not arise. As before noted, the very basic principle relied on for recovery is that Williams was

her agent, and in her endeavor to show this we can but conclude that she has entirely failed. Counsel for Mrs. Day cite the case of *Ruffner, Donnally & Co.* v. *Hewitt*, 7 W. Va. 604, to show that an agent may be ordinarily appointed by parol, in the broad sense of that term, at the common law, that is, by verbal declaration, in writing not under seal, or by acts and implications; and also cites Story on Agency, sections 15 and 54, to sustain the view that an agency may be created by express words or acts of the principal, or may be implied from his conduct or acquiescence, and that the nature and extent of the authority of an agent may be implied or inferred from the circumstances; and that the usual mode of the appointment of an agent is by an unwritten request, or by implication from the recognition of the principal, or from his acquiescence in the acts of his agent. The correctness of these authorities is not and cannot be disputed, because they enunciate plain legal principles, but the facts of this case are not such as to make Williams the agent of Mrs. Day, under the application of this doctrine.

Then, again, a great deal of authority is cited to support the view that when an agency has been once established to act with reference to the care of, and payment of taxes on real estate, that such an agency cannot be terminated without proper and legal notice to the principal of such termination, and the burden is upon the agent to show the termination; and particularly is it necessary when the agent obtains property with which he is entrusted, without the knowledge and consent of the principal. *Murdock* v. *Miller*, 84 Mo. 96. "Nor will an agent be allowed to make use of his position and information thereby obtained to acquire an interest adverse to his principal, and any interest so obtained will be decreed to be held in trust for the principal. That an agent employed to manage property cannot acquire title thereto by purchase at a sale for taxes or sheriff's sale," etc. 1 Am. & Eng. Ency. Law, (2d Ed.), 1085, and citing many cases.

These authorities are not questioned, and it is not necessary for us to discuss them, inasmuch as we hold that no agency has been established.

This brings us to the question as to whether or not the court decreed properly in dismissing the bill of the State in

the second above mentioned cause.   The decree in this re-
spect is so plainly right that it is hardly necessary to make
any comment upon it.    The land was returned delinquent
for the non-payment of taxes in the name of A. G. Cheno-
weth, sold by the State, purchased by Williams in 1887, and
conveyed to him by the clerk of the county court.   This
conveyed to him all the right, title and interest of A.
G. Chenoweth, thereby leaving no title in him to be for-
feited, and since the purchase by Williams, the taxes have
been paid by him and those claiming under him.

   The decree of the circuit court, dismissing the bill of the
State is affirmed; but it was error to refuse to dismiss the
bill of the plaintiff, Alice C. Day, and in taking a recovery
in her favor.   Therefore, in this respect, the decree is re-
versed, and her bill dismissed.

*Affirmed in part.*
*Reversed in part.*
*Dismissed, as to Alice C. Day.*