# CHARLESTON.

### Lera Cox Miller *v.* R. B. Miller.

### Submitted May 1, 1923.   Decided June 5, 1923.

Divorce—*Adultry May be Established by Circumstantial Evidence.*
   Adultry as a ground for divorce may be established by circumstantial evidence, sufficient to lead a reasonable and prudent mind to a conclusion of guilt.

Appeal from Circuit Court, Mercer County.
   Suit by Lera Cox Miller against R. B. Miller. From a decree for defendant, plaintiff appeals.

*Reversed and rendered.*

*John Kee* and *French, Easley & Easley,* for appellant.

Litz, Judge:

The plaintiff, Lera Cox Miller, appeals from a decree of the circuit court of Mercer county entered December 29th, 1921, refusing her a divorce from her husband, the defendant, R. B. Miller.

The defendant, a widower of fifty-nine, and plaintiff,

thirty-one years of age, without matrimonial experience, intermarried July 11th, 1917. To this union no children were born. The defendant, previously considered without means, suddenly, a short while before the marriage, came into the possession of some actual and greater prospective income from manganese mines due to the war demands for this metal. He immediately acquired a fine residence in the city of Bluefield, and induced plaintiff to marry him. They lived together until April 20th ,1920, when plaintiff, on account of defendant's intemperate habits in the use of intoxicating drinks and cruelty to her, as she claims, left him; and they have not since lived or cohabitated together. He was still in possession of the residence, but hopelessly insolvent. She instituted this suit on the day of her departure and in her original bill brings these charges and prays for a divorce from bed and board from the defendant, and for general relief.

On August 18th, 1920, defendant demurred to plaintiff's bill and also filed his answer thereto, denying its allegations; and averring that the plaintiff had without cause or excuse abandoned and deserted him, asked that his answer be treated as a cross-bill, and that he be decreed a divorce from bed and board from the plaintiff.

On September 1st, 1920, the plaintiff and defendant gave their testimony before the court, and upon this evidence a decree was entered September 2d, 1920, divorcing the parties from bed and board, but without an express finding of fact. During the same term of court, on the 11th of September, 1920, the decree of September 2d was set aside as "not expressing fully the decision and opinion of the court."

Thereafter, at March rules, 1921, the plaintiff filed her amended and supplemental bill adopting the allegations of the original bill, and further alleging that since the separation the defendant had been guilty of adultery with one Mattie Maynard, and other women whose names were to the plaintiff unknown; and upon this ground prayed for an absolute divorce from the defendant, and for general relief. In open court, May 10th, 1921, the defendant demurred to plaintiff's amended and supplemental bill, and filed his

answer denying the charge of adultery. Additional testimony was then taken on the issues raised by the pleadings. The testimony tends strongly to establish the charges of intemperance and cruelty made against the defendant.

In view of our conclusion, however, that the evidence on the charge of adultery against the defendant, though circumstantial, justifies the granting to the plaintiff of an absolute divorce, it is unnecessary to discuss the issues raised by the original pleadings.

It appears that defendant entertained at his home from October 11th to October 25th, 1920, a young woman about twenty-seven years of age by the name of Mattie Maynard, or Mattie Ambergey, who was notoriously immoral and unchaste, during the greater part of which time no persons other than defendant and this woman occupied the house. Mattie Maynard and another woman of apparently similar social stripe, whose name is not given, were brought to defendant's home October 11th, 1920, by one of his men acquaintances, referred to as a "drummer." These women were strangers to defendant at the time of their first appearance at his house, in company with three or four men, a few days previously. Defendant, in relating the stay of the two women after their second appearance October 11th, says:

> "Them two women was there, I don't know how many days, and one morning that married woman, *supposed to be,* left, went off on No. 15, said she was going down to pack her stuff, and I says to Mattie Maynard or Mattie Ambergey, 'What are you going to do, your cousin is gone,' and she says, 'Can't I stay here and cook and keep house for you,' and I says, 'No, you can't,' and she says, 'We will get the house contract closed up in a day or two,' and I says, 'I don't care,' *and we went on,* and the following Sunday Louie Dunn and his wife and Miss Lutie Jennings came out there, and they took in the situation, and says, 'I would get *shut* of that woman,' and I says, 'I am; I didn't expect her to stay this long,' and the following week, I asked her how long she was going to stay, and she says, 'Can't I stay until next Monday,' that was on the 25th, and she was there from the 11th to the 25th."

No legitimate reason is shown for the visit and continued stay of either of these women at defendant's home. He makes no pretense that either was there as his housekeeper. The defendant also appears to have entertained women and men at frequent drinking parties in his home. He was coarse, profane and of intemperate tendencies.

The authorities say that adultery may be presumed from adulterous disposition or tendency of the parties and an opportunity to commit the act. Schouler on Marriage, Divorce, Separation and Domestic Relations, 6 Ed., sec. 1567; 19 C. J. 139; *Thayer* v. *Thayer*, 101 Mass. 111, 100 Am. Dec. 110; 9 R. C. L. p. 329.

It would seem difficult, as is usual wherever the existence of a fact depends upon circumstantial evidence, to give any fixed or general rule as to what circumstances will or will not constitute proof of adultery, but each case must be governed by its own peculiar situation. The principle to be applied was stated in an early English case as follows: "It is not necessary to prove the direct fact of adultery, for being committed in secret it is seldom susceptible of proof except by circumstances which, however, are sufficient whenever they would lead the guarded discretion of a reasonable and prudent man to a conclusion of guilt." *Loveden* v. *Loveden,* 2 Hag. Con. 2.

It was held in the case of *Leedale* v. *Leedale,* (Ohio), 8 Oh. S. & C. P. 334, that where the husband, without apparent cause other than trivial troubles incident to the married lives of most people, leaves his family and boards with a woman of bad repute, the court will presume that he is living in adultery, although specific acts are not proved.

What difference is there whether a man, without an avowed legitimate purpose, keeps an immoral woman in his own home where he lives alone, or lives at her residence, where no one other than he and she stays? In addition to the positive evidence showing the defendant to be of unexemplary character, his entertainment of so immoral and unchaste a woman would, under the circmustances, create against him a presumption of immoral tendencies.

In the case of *Abel* v. *Abel,* 89 Iowa 300, 56 N. W. 442, the

court, considering as evidence of adultery by defendant the fact that two women of ill repute stayed all night at his home in the absence of his wife, said: "On one occasion, during the absence of his wife from home, two prostitutes were brought to his house and remained all night. He denies having knowledge of their real character, but when his course of life is considered and the circumstances upon which they came to his house, it is difficult to believe that they were there except with knowledge on his part of their character and mission. Under such circumstances his denial of acts of adultery is of little force."

As stated in *Moller* v. *Moller,* 115 N. Y. 466, the illicit amours of faithless husbands and wives are usually clandestine, and their wicked paths are hidden from public observation; and hence courts must not be duped, and they must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bring to bear upon it the experiences and observations of life, and, thus weighing it with prudence and care, give effect to its just preponderance.

The defendant may be innocent, but questions of fact must be decided from the evidence. He has by his own conduct furnished the evidence for his condemnation.

The decree of the circuit court complained of will be reversed and decree entered by this Court granting to plaintiff an absolute divorce from defendant.

*Reversed.*