ROY EDWARD HARPER

*v.*

RUBY MARIE HARPER

(No. 9743)

Submitted September 5, 1945. Decided September 25, 1945.

H. D. Rollins, for appellant.
Howard B. Lee and R. A. Blessing, for appellee.

RILEY, JUDGE:

The plaintiff, Roy Edward Harper, appeals from a decree of the Circuit Court of Kanawha County, which denied him an appeal from a decree of the Court of Common Pleas of that county. The last-mentioned decree denied plaintiff a divorce from the defendant, Ruby Marie Harper, sought on the ground that defendant was guilty of adultery, dismissed plaintiff's bill of complaint, awarded to plaintiff the custody of Carolyn Sue Harper, a child born to plaintiff and defendant on July 31, 1942, and directed that the child be kept with plaintiff's father and mother. Prior to the institution of this suit, plaintiff had been inducted into the United States Navy, in which he was serving at the time of the decrees complained of.

The bill of complaint alleges that plaintiff and defendant were married at Catlettsburg, Kentucky, in August, 1940; that they lived together as husband and wife until July, 1943; that at the time they last cohabited together, and at the time of the institution of this suit, both plaintiff and defendant were residents of Kanawha County; that Carolyn Sue Harper, their only child, was born on July 31, 1942; that at the time of the separation defendant turned over the custody of said child to plaintiff, who is now keeping it in the home of

his parents, Mr. and Mrs. Jesse Harper, at Elkview; that the defendant since her marriage to plaintiff has been guilty of adultery with one William Dahlen at St. Albans and at Elkview during the early part of 1943, and to and including the month of July of that year, and in the month of December, 1943, in the Phoenix Hotel in Charleston, with a Sergeant Casto, on which occasion she registered with the said Casto as man and wife. The bill of complaint contains certain allegations tending to indicate that defendant has no means of supporting the child or giving it proper attention and care; and that defendant's mother and father, where defendant intends to take the child, in the event the custody is awarded to her, is an unsuitable place for it to be kept.

The defendant filed an answer and cross-bill, in which she denies the material allegations of the bill of complaint, admits that she is living with her father and mother, and asserts that if awarded the custody of the child she will care for it at her parents' home, which is a suitable and proper place to rear the child. She asserts a claim for affirmative relief, and alleges that during the time she lived with plaintiff he had an unnatural aversion to the responsibilities of parenthood, and attempted to force her to have an abortion performed; that after the child was born plaintiff was cruel and abusive toward her, and continued so up until the time of the separation; that plaintiff, disregarding his marriage vows, was guilty of adultery with divers women of ill repute, whose names are unknown to defendant; that during all the time she lived with plaintiff she always conducted herself as a true, faithful and obedient wife; that plaintiff deserted her without just cause; and that the home of plaintiff's parents is not a proper place for rearing an infant child. In the cross-bill defendant prays that she may be decreed a divorce from plaintiff; that she may be awarded custody of the infant child; that plaintiff be required to pay to her such sums of money as may be proper and necessary for the main-

tenance and support of defendant and said child, together with sufficient money to enable defendant to employ counsel to defend this suit, and to support defendant during the pendency thereof. The case was referred to a special commissioner, who reported that plaintiff's charge that defendant had committed adultery had not been proved.

Plaintiff introduced in evidence photostatic copies of various letters couched in endearing terms, which he claims were mailed to the alleged co-respondent, William Dahlen. These copies, he says, were obtained by opening envelopes, removing letters for photostating, and then returning the originals and resealing the envelopes. The record also discloses that defendant was accustomed to correspond with various other persons in the armed services.

L. K. McWhorter and his wife lived next to the Harpers in St. Albans during the latter part of 1943. He testified that on one occasion about eleven o'clock in the evening during the latter part of July, 1943, he saw defendant come home with a man, other than plaintiff, whose identity was unknown to witness; that this man did not enter the house but kissed defendant at the door and then left. Witness "assumed" that defendant was intoxicated on that occasion. Mrs. McWhorter testified that defendant told her about spending the day with a soldier or sailor in Charleston; and that she went to the nearby Chesapeake and Ohio Railway tracks with the avowed purpose of waving to this serviceman as he passed through St. Albans on the train. She further testified that defendant told her that she was going to Indiana to visit this serviceman, who had given her money for that purpose. Witness saw defendant leave the house carrying a travelling bag, accompanied by two soldiers, whose identity was unknown to witness, and that she remained away for about a week, but whether defendant went to Indiana on that occasion witness did not know. She further testified that she saw defendant

intoxicated on one occasion. In all of these particulars defendant denied the testimony of these witnesses, except she admitted she left her home accompanied by two soldiers, one of whom was her cousin, and went to the home of her parents, Mr. and Mrs. W. T. Young, where she remained about a week. The testimony of the Mc-Whorters, even if true, does not establish the degree of proof required under the rule enunciated in *Wolfe* v. *Wolfe*, 120 W. Va. 389, 399, 198 S.E. 209.

The record, however, presents a state of facts which, in our opinion, amply sustains the allegation in the bill of complaint that defendant was guilty of adulterous conduct in the Phoenix Hotel in Charleston. Plaintiff and a friend, Lawrence Wines, testified, without substantial contradiction, that defendant accompanied by an army sergeant went to the Phoenix Hotel about two-thirty in the morning of December 4, 1943, where they registered as "Sergeant Virgil Nyda Casto and wife". They testified that from the place at the registration desk where they stood they saw defendant and the sergeant in a nearby room seated on the bed talking and laughing. They testified that when they started to leave a short time later defendant closed the door of the room. Shortly thereafter plaintiff called his father, Jesse Harper, who accompanied by the latter's young niece, joined plaintiff and Wines, and together the four returned to the hotel about three-thirty in the morning. They were directed by the clerk to the room in which defendant and the sergeant were last seen, and finding the door closed, opened it and found the sergeant in the act of dressing. Fred Seasor, the hotel clerk, testified that the sergeant and defendant came to the hotel together, and that the former registered defendant over her protest; that the door of the room was never closed while defendant was in the room; that shortly after plaintiff and Wines left the hotel on the occasion of their first visit defendant went to another room in the hotel which she and another girl were occupying pursuant to an earlier registration; that after plaintiff,

accompanied by Wines, his father and the niece, left, the sergeant went out of the hotel to get something to eat, and then returned to his room and closed the door. Witness testified that when he went off duty about four o'clock in the morning, the sergeant was still in the room. By way of contradiction the witness, Jesse Harper, testified that in answer to an inquiry addressed to the clerk, the latter said defendant had "left five minutes ago—left the room five minutes ago".

Defendant admits that she accompanied Casto to the hotel, but her explanation of her presence in the hotel does not bear credence. She does not remember the name she gave when she registered at the hotel, nor does she remember the name of the girl or girls who occupied the room with her. While it may be true that plaintiff and his corroborating witness, Wines, were not disinterested witnesses, in that one was seeking a divorce and the other assisting him in that effort, it must also be said that Seasor was interested in preserving the reputation of the hotel, and his own actions in permitting the sergeant to register defendant as his wife and allowing her to accompany him to the room. We think the finding of the trial chancellor that defendant was not guilty of adultery on this occasion was plainly wrong and against the preponderance of the evidence and should be reversed. *Rice* v. *Rice*, 88 W.Va. 54, Pt. 2 Syl., 106 S.E. 237.

This record teems with charges, counter-charges, and denials bearing on the relative treatment of the child by its parents. It would serve no useful purpose for us to state them in detail. There is also much evidence bearing on the question whether the home of plaintiff's parents, where the court directed the child to be placed, and the home of defendant's parents, where defendant lived after the separation, were suitable places for the child. It is not for this Court to draw a comparison between the two homes. It is sufficient for us to say, as we think we should do from this record, that plaintiff's

parents are respectable members of the community in which they reside; that they are interested in the child's welfare and morally fitted and amply able financially to provide for its care. In our opinion, the trial court was fully justified in finding, as it did, that the infant's interests would best be served by entrusting the child's custody to plaintiff's parents.

For the foregoing reasons, we reverse the decree complained of in so far as it dismissed plaintiff's bill of complaint and refused the prayer thereof, but affirm that part of the decree which awards the custody of the child to plaintiff's parents, and remand the cause with direction that a decree be entered granting the plaintiff a divorce.

*Reversed in part; affirmed in part.*