DOROTHY R. ROHRBAUGH

*v.*

CLAUDE E. ROHRBAUGH

(No. 10326)

Submitted September 25, 1951. Decided December 18, 1951.

*Vernon E. Rankin,* for appellant.

*H. R. Athey,* for appellee.

HAYMOND, JUDGE:

This suit in equity was instituted in the Circuit Court ·of Mineral County on October 15, 1948, by the plaintiff, Dorothy R. Rohrbaugh, to obtain a divorce from her husband, the defendant, Claude R. Rohrbaugh, on the ground ·of cruel or inhuman treatment.

Upon the bill of complaint of the plaintiff and upon her motion for alimony and attorney fees, pursuant to notice, the circuit court by decree entered October 28, 1948, required the defendant to support and maintain the plaintiff and her two small children in the home in which the plaintiff and the defendant were then living, directed the defendant to occupy a separate bedroom from that occupied by the plaintiff, enjoined the defendant from entering the bedroom of the plaintiff and from molesting her in any way, provided that the foregoing conditions of the decree should continue until changed upon the subsequent motion of the plaintiff, and ordered the defendant to pay a fee of $100.00 to the attorney for the plaintiff and $36.50 costs on or before January 15, 1949. The defendant filed an answer to the bill of complaint on January 14, 1949, and on February 17, 1949, after hearing the testimony of several witnesses, upon a second motion of the plaintiff for support and maintenance for herself and

her two infant children, the court required the defendant to pay the plaintiff, who had moved from the home of the defendant, $100.00 per month for such support and maintenance. By a decree entered in vacation on March 7, 1949, the defendant was given the custody of the two children of the plaintiff and the defendant and the amount awarded the plaintiff for her support and maintenance was reduced to $40.00 per month.

On March 15, 1949, the defendant filed his supplemental answer and cross bill, in which he prayed for a divorce from the plaintiff upon the grounds of adultery and cruel or inhuman treatment. After the entry of the order of March 7, 1949, the plaintiff returned to the home of the defendant, and later, on motion of the defendant, by a decree entered in vacation on March 26, 1949, she was required to move from his home. After having heard the testimony of a number of witnesses in connection with the various motions of the parties, and after the plaintiff had filed her reply to the answer and the supplemental answer and cross bill of the defendant, the court by decree entered July 28, 1949, referred the cause to a commissioner in chancery, who heard additional testimony offered by the parties and filed his report on October 24, 1949. The findings of the commissioner, among others, were that the plaintiff was not entitled to a divorce, and that the defendant was entitled to a divorce and should be awarded the custody of the children. Exceptions filed by the plaintiff to the report of the commissioner were overruled and by final decree, entered January 21, 1950, the divorce prayed for by the plaintiff in her bill of complaint was denied and the defendant was granted a divorce from the plaintiff and awarded the permanent custody of the two infant children of the planitiff and the defendant. From that decree this appeal was granted by this Court upon the petition of the plaintiff.

After the plaintiff and the defendant were married in Winchester, Virginia, in November, 1945, they returned to the home of the defendant at Wiley Ford in Mineral County. At the time of the institution of this suit the

plaintiff, who had been previously married, was about twenty two years of age and the defendant, a widower and the father of two children by his first wife, who died in 1943, was about forty five years of age. Prior to their marriage the plaintiff lived at the home of the defendant, as his housekeeper, after the death of his first wife. While the plaintiff was living at the home of the defendant she became pregnant by the defendant, and during her pregnancy their marriage occurred. Two children, both boys, were born of the marriage. The first child was born on May 5, 1946, and the second on November 19, 1947. After the birth of the first child differences arose between the plaintiff and the defendant and in September, 1948, they ceased to cohabit as husband and wife although the plaintiff remained at the home of the defendant until sometime in January, 1949, when she went to the home of a Mrs. Rader who also lived in Wiley Ford. The plaintiff continued to live there until some time in February, 1949, when she returned to the home of the defendant where she stayed until she was required to leave by the order entered in vacation on March 26, 1949, and since that time she has not lived at that place.

After the birth of the first child, in May, 1946, the plaintiff and the defendant engaged in frequent quarrels over financial and other matters. She complained that he did not give her sufficient money for clothes and household necessities. He accused her of extravagance and of frequent association and improper conduct with other men. He admits that during their quarrels, in which he says she called him vile names, he cursed her and called her vile names but he says that he did so because of her frequent absence from home until late hours at night during which she left her children at home with his two daughters, fourteen and sixteen years of age, or at the home of her acquaintances, and because of her neglect of the children and the home. He also admits that upon occasions he told her that he was not the father of their second child. She testifies that he called her a whore and other vile names and that on one occasion in June, 1947, he struck her violently and loosened two or three of her

teeth and threatened to kill her. The defendant denies that he threatened or struck the plaintiff at any time but says that she continually begged him to strike her for the purpose of causing him trouble. Despite these quarrels, however, the parties continued to have marital relations until some time in September, 1948.

The evidence shows that the defendant, who is employed by the Western Maryland Railroad Company, earns approximately $300.00 to $325.00 per month; that he is not extravagant; that he owns an automobile and the home in which the plaintiff and the defendant lived before their separation which he valued at $3,500.00; that the plaintiff wasted much of the money which the defendant gave her for living expenses; and that she incurred various store bills beyond his ability to pay them until he stopped her credit at those places. The evidence also shows, and she admits, that she was away from home as many as fifteen nights during the month of December, 1948, and that on some of those occasions she spent some time at night at bowling alleys and places of recreation where drinks were served. The plaintiff was seen by several witnesses in the company of different men at night while riding by automobile or while at the homes of other persons. One witness, an unmarried young man, testified that, not knowing at the time that the plaintiff was married, he rode with her in his automobile late at night and on that occasion she permitted him to feel her breasts but that she refused to engage in sexual intercourse with him. The plaintiff admits that she was with the witness in his automobile but denies that she engaged in the conduct to which he testified. She admitted that, on another occasion while walking along a street with an unmarried man named Kirtley, a bookmaker who lived in Cumberland, Maryland, with whom she was seen by different persons at different times and to whom she talked by telephone frequently, he held her arm but that she permitted him to do so because the street was slippery from snow and ice.

In February or March, 1949, the defendant was inform-

ed that the plaintiff and Kirtley had been found alone together at night in December, 1948, on a couch in the home of another married couple in Cumberland, and in March, 1949, the defendant filed his supplemental answer and cross bill in which he prayed for a divorce from the plaintiff on the grounds of adultery and cruel or inhuman treatment. As to the conduct of the plaintiff and Kirtley on that occasion, the husband and the wife who found the plaintiff and Kirtley, their next door neighbor at the time, in their home, and who had known the plaintiff and the defendant for several years and visited them at different times, testified that in December, 1948, upon their return about 9:30 o'clock at night after an absence of about an hour and a half from their home, from which their children were also then absent, they found the plaintiff and Kirtley alone in the living room of the house; that when they returned home they entered the front door which they had left unlocked; that the room was dark; and that the husband turned on the lights in the room. The husband testified that at that time the plaintiff and Kirtley were lying on a couch; that her appearance was "pretty bad"; that her dress was "up"; that Kirtley's clothing was "in bad condition too"; that "he had his pants down and was buttoning them up"; and that the witness told them not to come to "the house and act like that any more." · The wife testified to substantially the same facts as those testified to by her husband. She also testified that the plaintiff told her that she had had "relations" with Kirtley, that it was "a big thrill to go out with him", and that he was "a good sport". The husband also stated that his wife told him that the plaintiff had told· her that she had had intercourse with Kirtley. This testimony of the husband, introduced before the Commissioner, was objected to by the plaintiff but her objection was overruled. These witnesses also testified that the plaintiff had been with another man at bowling alleys and at their home, and that they had seen the plaintiff with Kirtley at bowling alleys, a saloon, a restaurant, a drug store, moving picture shows, on the streets, and in their home on numerous occasions.

The plaintiff, in her testimony, denied that she had ever had sexual relations with Kirtley or that she drank intoxicants. She did not, however, offer Kirtley as a witness in the case. The defendant testified that he did not often drink intoxicants, but he indicated that at a party which he and the plaintiff attended in June, 1947, he drank to excess. That was the occasion when he and the plaintiff quarrelled and the plaintiff testified that he struck her and loosened her teeth.

A number of witnesses produced by the defendant testified that he was, and that the plaintiff was not, a proper person to have the care and the custody of the children, and several witnesses produced by the plaintiff testified that she was, and that the defendant was not, a proper person to have their care and custody. On that issue, the judge of the circuit court requested and received a report prepared by a welfare worker of the Department of Public Assistance relating to the conduct and the character of the plaintiff and the defendant and the manner in which they treated and cared for their children. The report, which was filed and considered by the circuit court, contained numerous statements which were based on information obtained by the welfare worker from persons other than the plaintiff and the defendant. The person who made the investigation and prepared the report, however, testified as a witness and was examined by counsel for each of the parties with regard to matters set forth in the report.

In seeking reversal by this Court of the final decree of the circuit court the plaintiff assigns numerous errors. The assignments of error which merit consideration are, in substance: (1) The report of the welfare worker and the testimony of the witness that the plaintiff had told his wife that the plaintiff had had intercourse with Kirtley, being hearsay, were inadmissible, and the action of the court in admitting them constitutes reversible error; (2) the inequitable conduct of the defendant bars him of his right to relief in this suit; and (3) the evidence is not sufficient to show that the plaintiff committed any act of adultery.

There is no merit in the first contention of the plaintiff. Though the report of the welfare worker, which was filed and introduced in evidence contained many statements which, not being based upon her own knowledge, were hearsay, she was called as a witness and testified to many of the matters set forth in the report. She was examined or cross examined, without objection, by counsel for each of the parties to this suit. In this respect her report and its contents are entirely different from the letters and the reports sent to, and received and read by, the judge of the circuit court in the recent case of *Pugh v. Pugh,* 133 W. Va. 501, 56 S. E. 2d 901, 15 A. L. R. 2d 424. The writers of those papers did not appear as witnesses in that case, a habeas corpus proceeding in which the sole question presented involved the relative rights of contending parents to the custody of their child; the writings were not filed or introduced in evidence; and, though read by the judge of the circuit court, they were not considered by him in the decision of the case. For these reasons the statements in the opinion in the *Pugh* case, cited and relied on by the plaintiff, that those writings were inadmissible and could not be considered for any purpose, are inapplicable to the report of the welfare worker in this case. The contents of the report, to the extent that they were not within the personal knowledge of the maker of the report, or not obtained from statements by either of the parties, were hearsay and, as such, were inadmissible. The statement of the witness in whose home the plaintiff and Kirtley were found together in December, 1948, that his wife told him that the plaintiff had told her that she had had intercourse with Kirtley was also hearsay and was likewise inadmissible. The action of the circuit court in admitting these matters of hearsay, however, was not reversible error. *Maxwell* v. *Ford,* 103 W. Va. 124, 136 S. E. 777. In the trial of a case by a court without a jury it will be presumed that the court rejected and refused to consider any incompetent testimony that may have been admitted during the trial. *Risher* v. *Wheeling Roofing and Cornice Company,* 57 W. Va. 149, 49 S. E. 1016; *First National Bank of Parkersburg* v. *Prager and Son,*

50 W. Va. 660, 41 S. E. 363. "When a case is tried by a court in lieu of a jury, it is not an error, for which the appellate court will reverse, to hear illegal testimony, if there be enough legal testimony to justify the judgment." Point 1, Syllabus, *Abrahams* v. *Swann*, 18 W. Va. 274. *Maxwell* v. *Ford*, 103 W. Va. 124, 136 S. E. 777; *State* v. *Thacker Coal and Coke Company*, 49 W. Va. 140, 38 S. E. 539; *State* v. *Denoon*, 34 W. Va. 139, 11 S. E. 1003; *Nutter* v. *Sydenstricker*, 11 W. Va. 535. "In a case tried by a court in lieu of a jury, it is not error in the court to hear illegal testimony, the court being fully competent to discard such evidence." Point 2, Syllabus, *Wells-Stone Mercantile Company* v. *Truax*, 44 W. Va. 531, 29 S. E. 1006; *Farley* v. *Farley*, 136 W. Va. 598, 68 S. E. 2d 353; *Bailey* v. *Calfee*, 49 W. Va. 630, 39 S. E. 642; *The State, for use of Crumbacker* v. *Seabright*, 15 W. Va. 590.

The acts and the conduct of the defendant, which the plaintiff contends constitute inequitable conduct barring him from relief in this suit, do not amount to conduct of that character. Though the defendant admits that he engaged in frequent quarrels with the plaintiff, during which he called her vile names, this conduct upon his part was on numerous occasions provoked by the financial waste and extravagance of the plaintiff, her frequent absences from her home late at night, and her association with other men. The evidence clearly shows that the name calling engaged in and the abusive language employed by the parties during their quarrels were mutual. The acts of the defendant, as disclosed by the evidence in this case, did not induce, or were not, in any substantial degree, responsible for, the misconduct of the plaintiff, and they in no wise resemble the inequitable conduct of the plaintiffs in the cases of *Harbert* v. *Harbert*, 130 W. Va. 704, 45 S. E. 2d 15; *Wolfe* v. *Wolfe*, 120 W. Va. 389, 198 S. E. 209; *Mohr* v. *Mohr*, 119 W. Va. 253, 193 S. E. 121; and *Edwards* v. *Edwards*, 106 W. Va. 446, 145 S. E. 813, cited and relied upon by the plaintiff, or in the cases of *Cottle* v. *Cottle*, 129 W. Va. 344, 40 S. E. 2d 863; and *Myers* v. *Myers*, 127 W. Va. 551, 33 S. E. 2d 897. In consequence,

the rule which operated in each of those cases to deprive the plaintiff of a divorce because of inequitable conduct does not operate in favor of the plaintiff in this suit. The doctrine that one who seeks relief in a court of equity must come with clean hands applies to a suit for divorce, *Cottle* v. *Cottle,* 129 W. Va. 344, 40 S. E. 2d 863; *Edwards* v. *Edwards,* 106 W. Va. 446, 145 S. E. 813; *Maxwell* v. *Maxwell,* 69 W. Va. 414, 71 S. E. 571; *Hall* v. *Hall,* 69 W. Va. 175, 71 S. E. 103, 34 L. R. A., N. S., 758; but that doctrine does not operate as a defense against a party who establishes the ground on which he bases his right to a divorce against the party who invokes such doctrine, when it appears that the conduct of the party establishing such ground of divorce did not itself constitute a ground for divorce and was not responsible in any substantial degree for the guilt of the party who invokes such doctrine. *Hatfield* v. *Hatfield,* 113 W. Va. 135, 167 S. E. 89. See *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Moss* v. *Moss,* 113 W. Va. 183, 167 S. E. 444; *Shook* v. *Shook,* 111 W. Va. 284, 161 S. E. 235; Schouler, Marriage, Divorce, Separation and Domestic Relations, 6th ed., Vol. 2, Section 1721. In *Hatfield* v. *Hatfield,* 113 W. Va. 135, 167 S. E. 89, the misconduct of the plaintiff, the husband, toward the defendant who, the proof established, was guilty of adultery, did not bear any causal relation to the infidelity of the defendant and was not inequitable conduct which would bar his right to a divorce, and in point 2 of the syllabus with relation to the application of the doctrine of inequitable conduct, this Court said: "The doctrine of 'inequitable conduct', sufficient to bar a petitioner's right to a divorce, applies only where petitioner's 'inequitable conduct' has caused or contributed substantially to respondent's offense on which petitioner predicates his divorce cause." As already pointed out, the evidence in the case at bar shows that the conduct of the defendant did not cause or substantially contribute to the adultery of the plaintiff and that his treatment of the plaintiff did not constitue inequitable conduct on his part.

The contention of the plaintiff that the evidence is not sufficient to convict her of adultery as charged is wholly

untenable. The well established rule, uniformly recognized and applied in the decisions of this Court, is that to warrant a decree for divorce on the ground of adultery the burden rests upon the complainant to make out his case by evidence which is sufficiently clear, strong and convincing to carry conviction of guilt to the judicial mind and that evidence which raises only a strong suspicion of guilt is not sufficient. *Wolfe v. Wolfe,* 120 W. Va. 389, 198 S. E. 209; *Watson v. Watson,* 112 W. Va. 77, 163 S. E. 768; *Shook v. Shook,* 111 W. Va. 284, 161 S. E. 235; *Criser v. Criser,* 109 W. Va. 696, 156 S. E. 84; *Murrin v. Murrin,* 94 W. Va. 605, 119 S. E. 812; *Miller v. Miller,* 94 W. Va. 177, 118 S. E. 137; *Sharp v. Sharp,* 91 W. Va. 678, 114 S. E. 280; *Schutte v. Schutte,* 90 W. Va. 787, 111 S. E. 840; *Nicely v. Nicely,* 81 W. Va. 269, 94 S. E. 749; *Huff v. Huff,* 73 W. Va. 330, 80 S. E. 846, 51 L. R. A. (N.S.) 282. Notwithstanding the requirement of the foregoing rule with respect to the character and the degree of proof of adultery, it is generally recognized that acts of adultery are usually clandestine and occur in places which reasonably preclude the possibility of discovery, and that the participants are rarely surprised in the direct act; *DeBerry v. DeBerry,* 104 W. Va. 209, 139 S. E. 710; *Murrin v. Murrin,* 94 W. Va. 605, 119 S. E. 812; *Sharp v. Sharp,* 91 W. Va. 678, 114 S. E. 280; *Musick v. Musick,* 88 Va. 12, 13 S. E. 302; and adultery as a ground of divorce may be established by circumstantial evidence when such evidence is sufficient to lead a reasonable and prudent person to a conclusion of guilt. *DeBerry v. DeBerry,* 104 W. Va. 209, 139 S. E. 710; *Miller v. Miller,* 94 W. Va. 177, 118 S. E. 137; *Sharp v. Sharp,* 91 W. Va. 678, 114 S. E. 280.

The evidence of the guilt of the plaintiff, direct and circumstantial, satisfies every requisite of sufficient proof. She and her male companion were found together in the home of a man and his wife, who had been her friends and acquaintances, where she and he, their neighbor whom they had also known for several years, had frequently been present together. Her association with him, at different times and places on the numerous occasions

and in the circumstances disclosed by the evidence, some of which she admits, and her statements to the woman in whose home she was discovered that she had had "relations" with the same man with whom she was discovered and that it was "a big thrill to go out with him", show clearly her adulterous disposition when they were found together at night in December, 1948. It is also clear that her companion in some manner learned that the occupants of the home were temporarily absent and that their absence, unexpectedly terminated by their unsuspected return, furnished the needed opportunity for the commission of the adulterous act of the plaintiff. The condition and the positions of the plaintiff and her companion at the time they were found together clearly and convincingly established the sudden interruption or the immediate aftermath of the adulterous act of the plaintiff. The existence of her adulterous disposition and the favorable opportunity then present for the accomplishment of her purpose furnish strong and convincing proof that she then committed such act. At the time the plaintiff and her companion were discovered together neither offered any explanation for the situation in which they were found, and, indeed, no satisfactory explanation could have been offered. In addition, her failure to produce her companion as a witness, whose testimony apparently was readily obtainable by his personal appearance before the commissioner or by his deposition, creates the presumption that, if given, his evidence would directly contradict her denial of her guilt. *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209; *Mohr* v. *Mohr,* 119 W. Va. 253, 193 S. E. 121; *Miller* v. *Miller,* 111 W. Va. 338, 161 S. E. 566; *Thompson* v. *Beasley,* 107 W. Va. 75, 146 S. E. 885; *Union Trust Company* v. *McClellan,* 40 W. Va. 405, 21 S. E. 1025.

In *Harper* v. *Harper,* 128 W. Va. 10, 35 S. E. 2d 356, this Court held that the testimony of witnesses that they saw the defendant and a man not her husband seated on a bed in a hotel room, about two thirty o'clock in the morning, after she had been registered as his wife, that the defendant closed the door, and that when the witnesses re-

turned to the hotel about three thirty o'clock in the morning they went to the room, opened the door and found the man alone in the act of dressing, was sufficient to establish the commission of adultery by the defendant, although the foregoing testimony was in part contradicted by the testimony of the defendant and other witnesses.

Evidence that a husband about midnight, with a male companion, visited a house that had the reputation of a house of ill fame, remained for about an hour, and upon leaving with his companion was accosted by his wife and by her accused of adulterous conduct to which he made no answer and gave no explanation of his visit to the house, and that his wife had previously heard him tell his companion: "We will run down over the creek and look the janes over and pick out a couple", and had subsequently heard him say, in response to the inquiry of his companion: "Hen, how in hell do you suppose your wife knew where we were going, when we didn't know it five minutes before ourselves" that "She must be very clever" and that "it would have been too damn bad if they had caught us while we were in their", has been held sufficient to establish adultery upon the part of the husband. *Shook* v. *Shook,* 111 W. Va. 284, 161 S. E. 235.

When adultery is relied upon as a ground of divorce, evidence which is sufficiently strong, clear and convincing to carry conviction of guilt to the judicial mind will warrant a decree of divorce on that ground.

The denial by the plaintiff of her guilt of the act of adultery charged against her and of other portions of the testimony introduced in behalf of the defendant, and the different statements and opinions of the numerous witnesses who testified to the unfitness of the plaintiff, and the fitness of the defendant, to have the custody of their infant children, create a conflict in the evidence in this case. It is obvious, however, that notwithstanding such conflict, the clear preponderance of the evidence is in favor of the defendant and against the plaintiff on the issues of her guilt of adultery, and of her unfitness, and

of his fitness, to have the custody of the children. The final decree recites, among others, the findings of the circuit court that the plaintiff committed adultery with Kirtley in December, 1948, in Cumberland, Maryland, and that she is not a fit or proper person to have the custody of the children of the plaintiff and the defendant. The findings of the trial chancellor based on conflicting evidence will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence. *Acker* v. *Martin,* 136 W.Va. 503, 68 S.E. 2d 721; *Holt Motors* v. *Casto,* 136 W. Va. 284, 67 S. E. 2d 432; *Adams* v. *Ferrell,* 135 W. Va. 463, 63 S. E. 2d 840; *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793; *Hardin* v. *Collins,* 125 W. Va. 81, 23 S. E. 2d 916; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore,* 117 W. Va. 355, 185 S. E. 845; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England,* 85 W. Va. 101, 101 S. E. 73; *Bailey* v. *Calfee,* 49 W. Va. 630, 39 S. E. 642. The rule just stated operates and controls in suits for divorce. *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Hurley* v. *Hurley,* 127 W. Va. 744, 34 S. E. 2d 465; *Smith* v. *Smith,* 125 W. Va. 489, 24 S. E. 2d 902; *Crouch* v. *Crouch,* 124 W. Va. 331, 20 S. E. 2d 169; *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209.

Section 15, Article 2, Chapter 48, Code, 1931, as amended, in part provides that "Upon decreeing a divorce, * * *, the court may make such further decree as it shall deem expedient, concerning the care, custody, education and maintenance of the minor children, and may determine with which of the parents the children, or any of them, may remain; * * *." This provision vests discretion in the trial chancellor with respect to the custody of the minor children of the parties to a suit for divorce, *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Bailey* v. *Bailey,* 127 W. Va. 826, 35 S. E. 2d 81; *Settle* v. *Settle,* 117 W. Va. 476, 185 S. E. 859; *White* v. *White,* 106 W. Va. 680, 146 S. E. 720; *Buseman* v. *Buseman,* 83 W. Va. 496, 98 S.

E. 574; and this discretion, though reviewable, will not be disturbed on appeal unless its abuse by the trial chancellor clearly appears. *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Walker* v. *Walker,* 109 W. Va. 662, 155 S. E. 903; *Burdette* v. *Burdette,* 109 W. Va. 95, 153 S. E. 150; *Hale* v. *Hale,* 108 W. Va. 337, 150 S. E. 748; *Connor* v. *Harris,* 100 W. Va. 313, 130 S. E. 281; *Norman* v. *Norman,* 88 W. Va. 640, 107 S. E. 407; *Reynolds* v. *Reynolds,* 72 W. Va. 349, 78 S. E. 360; *Henrie* v. *Henrie,* 71 W. Va. 131, 76 S. E. 837; *Goff* v. *Goff,* 54 W. Va. 364, 46 S. E. 177. When spouses are divorced because of the marital misconduct of one of them, the law generally favors the award of custody of the children to the innocent spouse. *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Settle* v. *Settle,* 117 W. Va. 476, 185 S. E. 859; *Straughan* v. *Straughan,* 115 W. Va. 639, 177 S. E. 771; *Rierson* v. *Rierson,* 107 W. Va. 321, 148 S. E. 203; *Nix* v. *Nix,* 186 Va. 14, 41 S. E. 2d 345.

No reversible error appearing in the case, the final decree of the Circuit Court of Mineral County is affirmed.

*Affirmed.*